UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


<u>Cheryl McLaughlin</u>

    v.                                             Civil No. 14-cv-154-LM
                                                Opinion No. 2015 DNH 114
<u>Carolyn Colvin, Acting</u>
<u>Commissioner, Social</u>
<u>Security Administration</u>


### <u>O R D E R</u>

Pursuant to 42 U.S.C. § 405(g), Cheryl McLaughlin moves to reverse the Acting Commissioner's decision to deny her application for Social Security disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423.  The Acting Commissioner, in turn, moves for an order affirming her decision.  For the reasons that follow, the matter is remanded to the Acting Commissioner for further proceedings consistent with this order.

### Standard of Review

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  The findings of

> the Commissioner of Social Security as to any fact, if
> supported by substantial evidence, shall be conclusive
> . . . .

42 U.S.C. § 405(g).  However, the court "must uphold a denial of social security disability benefits unless 'the [Acting Commissioner] has committed a legal or factual error in evaluating a particular claim.'" Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Acting Commissioner's findings of fact be supported by substantial evidence, "[t]he substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts." Alexandrou v. Sullivan, 764 F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730 (2d Cir. 1966)).  In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  But, "[i]t is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the

courts." Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (citations omitted). Moreover, the court "must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988). Finally, when determining whether a decision of the Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole." Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## Background

The parties have submitted a Joint Statement of Material Facts, document no. 11. That statement is part of the court's record and will be summarized here, rather than repeated in full.

In April of 2010, McLaughlin underwent arthroscopic surgery on her right shoulder that addressed several different physical conditions including a damaged rotator cuff. Thereafter, she was prescribed some pain medication and went through physical therapy. Ultimately, she was cleared for full work duty, and returned to her position as a supermarket cashier.

In October of 2010, McLaughlin began complaining of hip and back pain. In connection with those complaints, she has been diagnosed with a minimal disc bulge at the T11-T12, mildly asymmetric left disc bulge and facet degeneration at the L3-L4, sciatica, chronic pain syndrome, lumbar facet joint pain, lumbar facet syndrome, chronic pain syndrome of uncertain etiology, and fibromyalgia. Treatment for those conditions has included physical therapy, home exercise, various medications, lumbar medial branch blocks, and orthotics.

The record includes three formal assessments of McLaughlin's ability to perform work related physical activities, two of which are relevant to the analysis that follows.[1]

In a Medical Source Statement of Ability to Do Work-Related Activities (Physical), completed in May of 2012, Dr. John Ford opined, among other things, that McLaughlin could both occasionally and frequently lift and/or carry less than ten pounds. The parties' Joint Statement of Material Facts mentions treatment by a variety of medical professionals, but does not

---

[1] The third assessment is a Functional Capacity Evaluation completed by occupational therapist John Lane. See Tr. 251-54. Because that evaluation was not rendered by an acceptable medical source, see 20 C.F.R. § 404.1513(d), it plays no part in the court's analysis.

4

mention any treatment by Dr. Ford, nor does it indicate that Dr. Ford ever examined McLaughlin.  However, Dr. Ford's medical source statement includes the following attestation:

> Based on my education, training and experience and my evaluation of Ms. McLaughlin including treatment of her and review of records and history, the foregoing represents my professional opinion as to Cheryl McLaughlin's physical limitations from 10/1/10 to the present.

Tr. 423.  That attestation appears to be mere boilerplate, and in the analysis that follows, the court presumes that Dr. Ford neither examined nor treated McLaughlin.

The record also includes a Physical Residual Functional Capacity Assessment completed by Margaret Callahan.[2]  Callahan is a single decisionmaker.  A single decisionmaker is an employee of the Social Security Administration who has no medical credentials.  See Stratton v. Astrue, 987 F. Supp. 2d 135, 138 n.2 (D.N.H. 2012) (citing Goupil v. Barnhart, No. 03-34-P-H, 2003 WL 22466164, at *2 n.2 (D. Me. Oct. 31, 2001)).  Callahan determined that McLaughlin had the capacity to lift and/or carry 10 pounds frequently and 20 pounds occasionally.

---

[2] "Residual functional capacity," or "RFC," is a term of art that means "the most [a claimant] can still do despite [her] limitations."  20 C.F.R. § 404.1545(a)(1).

After conducting a hearing, the ALJ issued a decision that includes the following relevant findings of fact and conclusions of law:

> 3. The claimant has the following severe impairment: right shoulder pain, status post surgery (20 CFR 404.1520(c)).
>
> . . . .
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).
>
> . . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant is to have a sit/stand option. The claimant can occasionally climb stairs, ramps, ladders, ropes and scaffolds, balance, stoop, kneel, crouch, crawl, and perform overhead reaching with the right upper extremity.
>
> . . . .
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> . . . .
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> . . . .

> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

Administrative Transcript (hereinafter "Tr.") 13, 15, 20, 21. Based upon his assessment of McLaughlin's residual functional capacity, and a hypothetical question posed to a vocational expert that incorporated the RFC recited above, the ALJ determined that McLaughlin was able to perform the jobs of hotel clerk, companion, and recreation assistant.  All three jobs are classified as light work, see 20 C.F.R. § 1567(b), and as semiskilled.

## Discussion

A. The Legal Framework

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability.  42 U.S.C. §§ 423(a)(1)(A)-(D).  The only question in this case is whether McLaughlin was under a disability from October 1, 2010, through the date of the ALJ's decision.

For the purpose of determining eligibility for disability insurance benefits,

> [t]he term "disability" means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). Moreover,

> [a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

To decide whether a claimant is disabled for the purpose of determining eligibility for disability insurance benefits, an ALJ is required to employ a five-step process. See 20 C.F.R. § 404.1520.

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional

> capacity" is such that he or she can still perform
> past relevant work, then the application is denied; 5)
> if the [claimant], given his or her residual
> functional capacity, education, work experience, and
> age, is unable to do any other work, the application
> is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920, which outlines the same five step process as the one prescribed in 20 C.F.R. § 404.1520).

The claimant bears the burden of proving that she is disabled. See Bowen v. Yuckert, 482 U.S. 137, 146 (1987). She must do so by a preponderance of the evidence. See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11) (D. Mass. 1982)). However,

> [o]nce the [claimant] has met his or her burden at
> Step 4 to show that he or she is unable to do past
> work due to the significant limitation, the
> Commissioner then has the burden at Step 5 of coming
> forward with evidence of specific jobs in the national
> economy that the [claimant] can still perform. Arocho
> v. Sec'y of Health & Human Servs., 670 F.2d 374, 375
> (1st Cir. 1982).

Seavey, 276 F.3d at 5 (parallel citations omitted). Finally,

> [i]n assessing a disability claim, the [Acting
> Commissioner] considers objective and subjective
> factors, including: (1) objective medical facts; (2)
> [claimant]'s subjective claims of pain and disability
> as supported by the testimony of the claimant or other
> witness; and (3) the [claimant]'s educational
> background, age, and work experience.

9

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690 F.2d 5, 6 (1st Cir. 1982)).

B. McLaughlin's Arguments

McLaughlin argues that the ALJ erred by: (1) relying upon a physical RFC assessment authored by a single decisionmaker; (2) determining that she was capable of performing semiskilled work without determining that she had transferable job skills; and (3) mishandling several opinions concerning his physical limitations. McLaughlin's first argument is persuasive and dispositive.

As noted, McLaughlin first contends that the ALJ erred by basing his step two determination and his RFC finding on an RFC assessment made by a Social Security single decisionmaker, who, by definition, is not an acceptable medical source. In response, the Acting Commissioner points out that the ALJ did not even mention the single decisionmaker's RFC assessment in his decision. The Acting Commissioner is correct; the ALJ did not mention Callahan's RFC assessment in his decision. But McLaughlin's deduction that the ALJ relied on Callahan's RFC assessment is understandable, given that Callahan's is the only RFC assessment in the record suggesting that McLaughlin had the

capacity to perform light work.  In any event, and notwithstanding McLaughlin's argument about the impropriety of relying upon an opinion from a single decisionmaker, the real question here is whether the ALJ correctly found that McLaughlin was capable of meeting the physical exertion requirements of light work.

Under the applicable Social Security regulations, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).  The record includes one statement on McLaughlin's capacity to lift and carry that was rendered by an acceptable medical source.  See 20 C.F.R. §§ 1513(a) & (d) (identifying licensed physicians as acceptable medical sources and characterizing non-medical sources such as Callahan and occupational therapist John Lane as "other sources").  That statement came from Dr. Ford.  According to Dr. Ford, McLaughlin's capacity to lift and carry did not qualify her to perform light work.

As he was obligated to do, the ALJ evaluated Dr. Ford's opinion.  See 20 C.F.R. § 404.1527(c).  He gave that opinion limited weight, and gave two reasons for doing so.

First, he noted that "[t]he evidence does not indicate that Dr. Ford treated or even examined the claimant."  Tr. 19.  The

hierarchy of medical source opinions described in the Social Security regulations provides that, generally speaking, the greatest weight should be placed on opinions from treating sources, with less weight placed on opinions from medical sources who merely examine a claimant, and the least weight of all on opinions from medical sources who have neither treated nor examined a claimant.  See 20 C.F.R. § 404.1527(c).  Those regulations would have allowed the ALJ in this case to discount Dr. Ford's opinion and give greater weight to an opinion from an examining source or a treating source.  But there are no other medical opinions in this case, which makes it largely analogous to Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999), in which the court of appeals directed the district court to remand the matter to the Commissioner because the ALJ formulated an RFC that contradicted the only opinion in the record that was rendered by an acceptable medical source.  See also Littlefield v. Colvin, No. 14-cv-53-LM, 2015 WL 667641, at *6 (D.N.H. Feb. 17, 2015) (explaining that after rejecting a medical opinion without having an alternative medical opinion to rely on, "the ALJ erred by making a mental RFC determination that was not supported by a medical opinion"); Jabre v. Astrue, No. 11-cv-332-JL, 2012 WL 1216260, at *8 (D.N.H. Apr. 5, 2012), report and recommendation adopted by 2012 WL 1205866 (D.N.H. Apr. 9, 2012)

(same).  Based upon Nguyen, Littlefield, and Jabre, the ALJ in this case erred by formulating an RFC that included a limitation on lifting that was not supported by a medical opinion.

In addition to relying upon Dr. Ford's lack of a treating or examining relationship with McLaughlin, the ALJ offered a second reason for discounting Dr. Ford's opinion.  Specifically, the ALJ explained that Dr. Ford's "opinion related to sedentary work limited to lifting less than 10 pounds frequently is contrary to treatment records that indicate improvement after shoulder surgery, mild disc desiccation and no nerve impingement, normal gait and station, and normal neurological exams."  Tr. 19-20.  The problem is that "[t]he court of appeals for this circuit has repeatedly held 'that since bare medical findings are unintelligible to a lay person in terms of residual functional capacity, the ALJ is not qualified to assess residual functional capacity based on a bare medical record.'" Jabre, 2012 WL 1216260, at *8 (quoting Gordils v. Sec'y of HHS, 921 F.2d 327, 329 (1st Cir. 1990)).  That is why, "when assessing a claimant's RFC, '[t]he general rule is that an expert is needed to assess the extent of functional loss." Jabre, 2012 WL 1216260, at *8 (quoting Roberts v. Barnhart, 67 F. App'x 621, 622-23 (1st Cir. 2003); citing Manso-Pizarro, 76 F.3d at 17).

The Acting Commissioner defends the ALJ's finding that McLaughlin was capable of light work by arguing that the circumstances of this case bring it within an exception to the rule stated in Gordils.  Under that exception, "the [Commissioner] is [not] precluded from rendering common-sense judgments about functional capacity based on medical findings, as long as the [Commissioner] does not overstep the bounds of a lay person's competence and render a medical judgment." Jabre, 2012 WL 1216260, at *8 (quoting Gordils, 921 F.2d at 329).  The court cannot agree with the Acting Commissioner that a lay person, exercising common sense judgment: (1) can translate general improvement from shoulder surgery into a specific capacity for lifting; (2) knows the relationship between lifting ability and disc desiccation, nerve impingement, gait and station, and neurological exams; or (3) has the ability to determine whether a person with mild disc desiccation, a lack of nerve impingement, normal gait and station, and normal neurological exams is or is not capable of lifting 20 pounds occasionally and 10 pounds frequently.

   Because the ALJ in this case was not qualified to make an RFC finding without the benefit of evidence from an expert, and because there is no evidence from an expert that supports the ALJ's finding that McLaughlin was capable of light work, that

14

finding is not supported by substantial evidence. See Jabre, 2012 WL 1216260, at *9. Accordingly, this case must be remanded to the Acting Commissioner for a proper RFC finding. See id. Finally, because McLaughlin's first argument is sufficient to warrant a remand, the court need not address her two remaining claims of error.

## Conclusion

For the reasons detailed above, the Acting Commissioner's motion for an order affirming her decision, document no. 10, is denied, and McLaughlin's motion to reverse the decision of the Acting Commissioner, document no. 8, is granted to the extent that the case is remanded to the Acting Commissioner for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g). The clerk of the court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

June 8, 2015

cc:   Penelope E. Gronbeck, Esq.
      Karen B. Fitzmaurice, Esq.
      Robert J. Rabuck, Esq.